UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | § § § |
| v. | § CRIMINAL NO. 3:08-CR-268-B § |
| JOSE JUAN HERNANDEZ | § § |
| Defendant. | § |

## MEMORANDUM OPINION AND ORDER ON DEFENDANT'S PRETRIAL MOTIONS

Before the Court is the Motion to Suppress Illegally Seized Evidence and Oral Statements (doc. 206), filed by Defendant Jose Juan Hernandez on July 26, 2009. In addition to the Motion to Suppress, the Court has before it the Defendant's Motion to Dismiss under the Federal Speedy Trial Act (doc. 205), Defendant's Motion in Limine (doc. 207), and Defendant's Second Motion in Limine (doc. 209). A hearing was held on the foregoing motions on September 18, 2009. For the reasons that follow all three motions are DENIED.

### I. BACKGROUND[1]

In 2007, the DEA was investigating a drug trafficking organization involving a man by the name of Angel Hernandez. In the course of that investigation, DEA officers obtained court approval to intercept telephone calls made to and from Angel's cellular phone. From these conversations, the officers came to believe that the Defendant, Jose Juan Hernandez, was also involved in the sale and distribution of drugs. On February 15, 2008, officers intercepted a call from the Defendant to Angel

---

[1] The facts are based on the evidence at the hearing.

which led them to suspect that the Defendant was en route to collect narcotics.

Prior surveillance efforts had revealed that Angel drove a Chevrolet pickup truck and that he may have been using the truck to facilitate the distribution of his drugs. Based on that suspicion, DEA officers had placed a tracking device on the truck to assist them in locating Angel. Consequently, after the February 15th phone call, officers were able to locate the truck and determined that it was headed towards California.

DEA officers in California were alerted about the ongoing investigation in Dallas and began surveillance. Local officers found the Chevrolet pickup truck parked outside of a hotel. When they arrived at the scene, officers witnessed Angel loading boxes onto the back of the truck and Defendant subsequently driving away in the truck with a woman and a child. Given this suspicious activity, the DEA sought assistance from highway patrol officer, A.J. Cichella. Officer Cichella, who testified at the hearing, stated that he eventually saw the truck on a California interstate. He noticed that there was a blue tarp on the bed of the truck which was "blowing up" and creating a safety hazard. Officer Cichella alleges that after driving next to the truck for a period of time, it "floated" into his lane on two different occasions without signaling. Because this was a violation of the California Traffic Code, at that point, he decided to make the traffic stop at issue in this case.

Once the Defendant pulled the truck over, Officer Cichella noticed that the child in the back seat was not in a child car-seat, also a violation of the California traffic code. Officer Cichella explained to the Defendant why he was being stopped and then began asking him a series of questions regarding the nature and details of his trip to California, including what city and hotel he had stayed at during his trip. The Defendant became nervous during the questioning and began giving conflicting answers. Office Cichella asked the female passenger similar questions. Her answers

contradicted those of the Defendant. At that point, Officer Cichella obtained consent from the Defendant to search the truck. Moments later, a K-9 officer arrived at the scene to assist with the search. The drug dog alerted the officers as to the possibility of narcotics in the truck. As a result, the officers detained the Defendant and, once at the police station, 20 packages of methamphetamine were discovered hidden inside flower pots on the bed of the truck.

The Defendant was arrested by local authorities in California and plead guilty to the charges against him in that state. On March 17, 2008, he was sentenced to four years in prison. The instant indictment was filed on September 3, 2009. The Defendant was arraigned in Dallas on April 10, 2009.

Now, as the case progresses to trial here in this Court, the Defendant seeks to suppress statements made to police officers while in custody in California and any evidence obtained as a result of the warrantless search of the Chevrolet truck. Additionally, Defendant requests that the indictment against him be dismissed on the grounds that he was not indicted within the time prescribed by the Speedy Trial Act.

## II.

## MOTION TO SUPPRESS

Defendant contends that there was no justification for the traffic stop which led to his arrest in California. Therefore, he argues, all evidence seized as a result of that stop is fruit of the poisonous tree and should be suppressed.

A.   *Legal Standards*

Traffic stops are considered seizures within the meaning of the Fourth Amendment. *Delaware v. Prouse,* 440 U.S. 648, 653 (1979). However, because they are more similar to

investigative detentions than to formal arrests, their legality is determined using the two-prong reasonable suspicion inquiry articulated in *Terry v. Ohio*, 392 U.S. 1 (1968). *United States v. Grant*, 349 F.3d 192, 196 (5th Cir. 2003). Under the *Terry* test, the court must determine (1) whether the officer's action was justified at its inception and (2) whether the search or seizure was reasonably related in scope to the circumstances that initially justified the traffic stop. *Terry,* 392 U.S. at 19-20; *Grant*, 349 F.3d at 196. The Defendant contests the traffic stop at issue under both prongs of the *Terry* inquiry.

      *B.    Analysis*

           i.    <u>Was the stop justified at its inception?</u>

Defendant argues that Officer Cichella did not have an objective basis to justify the traffic stop. Instead, Defendant contends, the traffic stop was simply a pretext to detain him and search his vehicle for narcotics. The Government does not deny that the traffic stop was a pretext used to assist DEA officers in determining whether the Defendant had hidden narcotics in the truck. The overarching issue is whether the Officer Cichella's underlying motives affect the validity of the stop.

An officer making a traffic stop "must be able to point to specific and articulable facts which taken together with rational inferences from those facts, rationally warrant the intrusion." *United States v. Sanchez-Pena*, 336 F.3d 431, 437 (5th Cir. 2003)(citing *Terry*, 392 U.S. at 21). The Fifth Circuit has held that an officer's actual motivations do not affect the constitutional reasonableness of the stop. *Id.* "An officer may stop a motorist for a traffic violation even if, subjectively, the officer's true motive is to investigate unrelated criminal offenses." *Id.*

Here, Officer Cichella, who was a highly credible witness, points to a specific safety hazard which warranted the traffic stop: the Defendant's failure to stay within his traffic lane. Viewed

objectively, this justified the traffic stop. Officer Cichella did what he was legally authorized to do–stop a vehicle on the reasonable basis that it was in violation of the California Traffic Code. Therefore, his action should not be questioned simply because of the subjective intent with which he acted. *See United States v. Causey*, 834 F.2d 1179, 1184 (5th Cir. 1987) (holding that "so long as police do no more than they are authorized and legally permitted to do, their motives in doing so are irrelevant and hence not subject to inquiry").

Defendant points to the fact that no traffic citation was issued as evidence that the traffic stop was not grounded on an actual traffic violation. However, he does not direct the Court to any cases which establish or even suggest that a lack of citation indicates a lack of legal justification for an officer's traffic stop. Instead, in support of his contention, Defendant cites *Sanchez-Pena*, a case in which the Fifth Circuit upheld a district court's denial of the defendant's motion to suppress. There, the court found that an officer had a reasonable basis to make a traffic stop where the defendant veered from his traffic lane on several occasions. *Sanchez-Pena*, 336 F.3d at 437. Nowhere in the opinion does the Fifth Circuit hold that the constitutionality of a traffic stop depends on the issuance of a traffic citation or that the lack of citation is evidence of a lack of probable cause for the stop.

    ii. <u>Was the search or seizure reasonably related in scope to the circumstances that initially justified the traffic stop?</u>

Defendant urges that the questions asked by Officer Cichella "had absolutely no relation" to the traffic violations and thus went beyond the scope of lawful questioning during a traffic stop. He argues that questions asked during a traffic stop should be related to the traffic citation. However, in *United States v. Shabazz*, 993 F.2d 431, 436 (5th Cir. 1993), the Fifth Circuit expressly rejected

the proposition that questioning on a subject unrelated to the traffic stop is a violation of the Fourth Amendment. The court held that such questioning is unconstitutional only if it is extensive and extends the length of the detention beyond the time necessary to effectuate the purpose of the stop. *Id.* Additionally, the court specifically found that questioning which takes place while the detaining officer is investigating and processing the traffic violation does not extend the initial seizure and is therefore lawful. *Id.*

Here, the Defendant was pulled over at 4:45 p.m. and consented to a search of the vehicle at 5:00 p.m. The questioning at issue took place during that 15 minute interval. Because the questioning was done while the Officer processed one of the traffic violations it did not extend the length of the detention beyond the time necessary to effectuate the purpose of the stop. Thus, given the holding in *Shabazz*, it is unlikely that this is the sort of 'excessive questioning' which the Fifth Circuit would find to be a violation of the Fourth Amendment.

C.  *Challenge to GPS Device*

Lastly, Defendant contends that his constitutional rights were violated by the warrantless placement of a GPS tracker on the pickup truck he drove to California. The Government asserts that they had reasonable suspicion warranting the use of the monitoring device and that the placement and use of the device complied with Fourth Amendment requirements.[2]

In *United States v. Michael*, 645 F.2d 252 (5th Cir. 1981), the Fifth Circuit en banc reversed a district court's suppression of evidence and held that reasonable suspicion alone was enough to

---

[2] The Government also challenges the Defendant's standing to complain about the tracker, contending the vehicle was not owned by the Defendant. The Court does not address standing but also finds that the Government has not waived the issue.

support the warrantless installation of a monitoring device on the exterior of the automobile. *Id.* at 256. While the court found that installing a tracking device constituted a search under the Fourth Amendment, it held that the expectation of privacy with respect to the movements of a vehicle on public roadways was "substantially reduced." *Id.* at 256-258. The court noted that because the device was on the outside of the vehicle, and the vehicle's interior had not been searched, the intrusion was minimal and thus lawful for Fourth Amendment purposes. *Id.*

Here, the credible and unchallenged testimony of a DEA taskforce officer was that agents intercepted a telephone call from the Defendant which, based on their experience and collective knowledge, led them to reasonably suspect that the truck was headed to collect narcotics. According to the credible testimony of the taskforce officer, the tracking device used to monitor the truck was installed on the exterior of the vehicle while it was parked on a public street. Moreover, the agent testified that the monitoring which took place consisted of following the truck on public highways and streets. Based on the credible testimony of Officer Cichella at the hearing, the traffic stop at issue, which resulted from the use of the tracking device, occurred on a public interstate in California. Consequently, in light of the holding in *Michael*, there is no evidence which suggests that Defendant's Fourth Amendment rights were violated by the placement of the tracking device.

### III.

### MOTION TO DISMISS UNDER FEDERAL SPEEDY TRIAL ACT

Defendant contends that his right to a speedy trial under the Federal Speedy Trial Act has been violated because (1) he was not indicted within 30 days of being arrested by authorities in California and (2) the Government did not promptly file its application for a *Writ of Habeas Corpus Ad Prosequendum*. Therefore, he argues, the indictment against him should be dismissed.

The Speedy Trial Act provides that an indictment charging a federal criminal defendant with the commission of an offense be filed within thirty days from the date on which such defendant was arrested or served with a summons in connection with such charges. 18 U.S.C. § 3161 (b) (2008). The Fifth Circuit has found that the clock for speedy trial purposes begins to run when federal authorities take the defendant into continuous federal custody or when the person is being held for the purpose of answering to federal charges. *United States v. Taylor*, 814 F.2d 172, 174 (5th Cir. 1987).

Defendant argues that because federal authorities aided in the investigation and the arrest of the Defendant, the clock should begin to run from the arrest in California on February 17, 2009. Defendant's argument fails. In *Taylor*, the court expressly held that the Speedy Trial Act does not begin to run when defendant is arrested by state authorities on state charges. *Taylor*, 814 F.2d at 174. "An arrest by a state officer, even if federal officials are cooperating at the time, does not start the running of the 30-day time period." *Id.* at 175; *see also United States v. Amuny*, 767 F.2d 1113, 1120 (5th Cir. 1985) (holding that where federal officials were involved intimately in defendant's arrest but relinquished control over him shortly after the arrest their conduct did not violate his speedy trial rights). Here, Defendant was in the custody of the State of California when the federal indictment against him was filed. Therefore, he had not yet been arrested by federal authorities and it is impossible for the 30-day period to have lapsed in violation of the Speedy Trial Act.

Defendant also argues that the Government attorney responsible for the prosecution did not promptly file the application for a *Writ of Habeas Corpus Ad Prosequendum*. Section 3161(j) of the

Speedy Trial Act mandates that "if the attorney for the Government knows that a person charged with an offense is serving a term of imprisonment in any penal institution, he shall promptly undertake to obtain the presence of the prisoner for trial; or cause a detainer to be filed with the person having custody of the prisoner and request him to so advise the prisoner and to advise the prisoner of his right to demand trial." 18 U.S.C. § 3161 (j)(2008). The Fifth Circuit has not defined the term "promptly" for purposes of the Act.

Here, Defendant was indicted on federal charges on September 16, 2008 and the *Writ of Habeas Corpus Ad Prosequendum* was not sought until January 6, 2009. It is unclear whether the four-month delay would constitute a violation of § 3161 (j) requirement. However, the Government credibly asserts that the prosecuting attorney in this case was not aware, between the unsealing of the indictment and the filing of the Writ, that the Defendant had plead guilty and was incarcerated in the State of California. Assuming this is true, and there is no information to the contrary, the delay is irrelevant and there does not appear to be a violation of the Speedy Trial Act in this situation. The statute clearly indicates that the attorney for the government must know of the defendant's imprisonment.[3]

## IV.

## MOTIONS IN LIMINE

---

[3]It should also be noted that even if the Court were to find that this provision of the Speedy Trial Act was violated, it is unclear whether the remedy under these circumstances would be to dismiss the indictment. The Ninth Circuit, Seventh Circuit, and Tenth Circuit, have all expressly held that dismissal of the indictment is not a remedy for a violation of § 3161 (j). *See, e.g., United States v. Valentine,* 783 F.2d 1413, 1415 (9th Cir. 1986); *United States v. Torres-Centeno,* 211 F.3d 1279 (10th Cir. 2000); *United States v. Dawn,* 900 F.2d 1132 (7th Cir. 1990). While the Fifth Circuit has not addressed the issue, there is nothing to suggest that its analysis of the legislative history and language of the statute would be any different.

Defendant has filed two Motions in Limine. The First Motion requests that the Court order the Government approach the bench before introducing evidence of Defendant's legal status in the United States. The Second Motion requests that the Court order the Government to approach the bench before presenting any evidence regarding the Defendant's California felony conviction to the jury. The Government agrees with both Motions and will approach the bench before offering any such evidence.

## V.   CONCLUSION

After the hearing, the Court will likely find that the evidence and statements were legally obtained and should not be suppressed. Therefore, the Motion to Suppress filed by Defendant should be DENIED. Furthermore, because Defendant's arrest by the California authorities on state charges did not trigger the Speedy Trial Act, the Defendant's Motion to Dismiss should also be DENIED.

**SO ORDERED.**

**SEPTEMBER 21, 2009**

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE